IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02277-WJM-NRN

MELODIE BUSHMAN,
on behalf of herself and all others similarly situated,

Plaintiffs,

v.

NATIONWIDE AGRIBUSINESS INSURANCE COMPANY,
an Iowa Corporation, and DOES 1-10, inclusive,

Defendants.

---

**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND APPOINTMENT OF CLASS COUNSEL**

---

Plaintiff, Melodie Bushman ("Plaintiff") and defendant Nationwide Agribusiness

Insurance Company ("Nationwide") (collectively, the "Parties") hereby jointly move for

preliminary approval of the Stipulation of Class Action Settlement ("Settlement Agreement")

between Plaintiff and Nationwide, and for appointment of Kirtland & Packard LLP ("K&P") and

Huff & Leslie LLP ("H&L") as Class Counsel.

**CERTIFICATION PURSUANT TO D.C.COLO.LCivR 7.1(a)**

Pursuant to D.C.COLO.L CivR 7.1, undersigned counsel certify they conferred with each

other prior to filing this motion and bring the motion jointly.

**JOINT MOTION**

**I.      BACKGROUND OF THE LITIGATION AND SETTLEMENT**

Plaintiff and Nationwide move for preliminary approval of their Settlement Agreement

under *FRCP* ("Rule") 23(c)(2) and (e).  The Parties resolved this lawsuit after dispositive motion practice, significant discovery, arm's length negotiation, and exchanges of relevant information.

Plaintiff brought the lawsuit pursuant to Rule 23 on behalf of herself and all others similarly situated, seeking to represent all of Nationwide's Colorado insureds who suffered total vehicle losses and to whom Plaintiff alleged Nationwide did not pay ownership tax and title and registration fees pursuant to Colorado Revised Statutes ("C.R.S.") § 10-4-639(1).  (*See* Third Amended Complaint ("TAC"), Doc. No. 72)  Essentially, Plaintiff alleges Nationwide uniformly underpaid fees owed its insureds under C.R.S. § 10-4-639(1).  Like all Class Members she seeks to represent, Plaintiff was insured by Nationwide and suffered an event resulting in a total loss determination by Nationwide after her insurance claim was made.  (*See id.*)  In her TAC, Plaintiff alleges Nationwide's conduct violated C.R.S. § 10-3-1115, *et seq.*, as an unreasonable delay of benefits owed, and constituted bad faith breach of an insurance contract under Colorado law, breach of contract, and breach of the duty of good faith and fair dealing. (*See id.*)

### **Procedural History of the Settlement Negotiations**

During the course of the Action, the Parties engaged in extensive dispositive motion practice, written discovery, and exchanged document productions.  In or about December 2018, Plaintiff and Nationwide agreed to participate in an in-person settlement conference regarding the issues in the lawsuit.   The Parties thereafter continued to engage in settlement discussions, which included numerous telephonic calls and an in-person settlement conference in Los Angeles on January 15, 2019.  At the settlement conference, the Parties agreed to preliminary settlement terms.  After months further negotiating final, detailed settlement terms, the Parties fully executed the Settlement Agreement on June 11, 2019.  (*See* Stipulation of Class Action

Settlement and exhibits, attached as Ex. A to Declaration of Joshua A. Fields ("Fields Decl.")).

### **Summary of the Proposed Settlement**[1]

The Parties' Settlement Agreement proposed certification of a settlement Class in the lawsuit pursuant to Rule 23(b)(3) of: "all Persons in Colorado who had a Covered Loss." (Fields Decl., Ex. A, p. 3, ¶ 5)  A Covered Loss is defined as: "a first party physical damage insurance claim, with a date of loss during the Class Period, that resulted in an indemnity payment for the total loss of the insurance vehicle, on a private passenger automobile insurance policy issued by" Nationwide or one of its related entities.  (*Id.*, at pp. 3-4, ¶ 11)  The proposed Settlement Agreement provides potential Class Members substantial benefit in relation to the allegedly underpaid fees: Nationwide has agreed to pay $40.00 each to any of the potential 6,634 Class Members who submit a timely and valid Claim Form.  (*Id.*, at p. 8, ¶¶ 31-32)

In addition, subject to Court approval, based on Plaintiff's counsel's lodestar at the time of the settlement conference, Nationwide has agreed to pay Plaintiff's counsel up to $121,000 in attorney's fees and costs[2], and up to $2,000 to the Class Representative as a service award for prosecuting the lawsuit on behalf of the Class. (Fields Decl., Ex. A, at p. 9, ¶ 34, p. 11, ¶ 43) Any funds remaining in the account established by the Administrator for payment of Settlement Checks due to uncashed Settlement Checks shall be distributed to the Parties' designated *cy pres* recipient Legal Aid of Colorado, or as otherwise ordered by the Court.  (*Id.*, at pp. 8-9, ¶ 34)

---

[1] All terms are defined in the Settlement Agreement.  (Fields Decl., Ex. A)

[2] C.R.S. § 10-3-1116(a), which provides for statutory damages to a plaintiff for a C.R.S. § 10-3-1115 claim, includes an express provision for the recovery of attorney's fees to the plaintiff.

**Notice**

Notice to Class Members in the form of the Class Notice (Ex. B, Settlement Agreement), along with a copy of the Claim Form (Ex. A, Settlement Agreement), will be sent via first-class mail not later than sixty (60) days before the Final Approval Hearing.  (*Id.*, at pp. 14-16, ¶¶ 47-51)  In addition, the Class Notice and Claim Form will be available upon request from the Administrator, who will set up a toll-free number to accept phone calls, and also on a settlement website (listed in the Class Notice) set up and maintained by the Administrator that will contain information on the Settlement Agreement, relevant pleadings, the Opt-Out Form (Ex. D, Settlement Agreement), and how to obtain a copy of the Settlement Agreement and exhibits thereto.  (*Id.*, at p.16, ¶ 51)  Claim Forms will also be able to be downloaded from the website and may be submitted by mail or online.

The notice provides direct individual notice to all Class members and is reasonable, appropriate, satisfies due process, and is the best notice practicable per Rules 23(c)(2)(B) and 23(e)(1).   The manner of providing for opt-outs in Section VIII of the Settlement Agreement is reasonable, appropriate and satisfies Rule 23(c)(2)(B).  The Class Notice will instruct members of the Class wishing to exclude themselves from the Settlement to mail to the Administrator, not later than twenty (20) days prior to the Final Approval Hearing, a valid Opt-Out Form (Ex. D, Settlement Agreement), which will be available on the settlement website.  A member of the Class who submits a timely and valid Opt-Out Form will not be bound by the Settlement.

**Actions Requested of the Court**

By this motion, the Parties request the Court enter a "Notice Order" granting preliminary approval.  (*See* Order Preliminarily Approving Class Settlement, Ex. E, Settlement Agreement)

That Order authorizes the tasks necessary to allow the proposed settlement process to commence. Those tasks include: (a) conditionally certifying the Class for settlement purposes only; (b) appointing the Administrator; (c) providing notice of the Settlement to affected persons per the Settlement Agreement's terms; (d) establishing procedures for objections to and exclusions from the proposed settlement; (e) setting a date for the final approval hearing; and (f) appointing Class Counsel per Rule 23(g) and the Class Representative.

## II.   THE COURT SHOULD PRELIMINARILY CERTIFY THE PROPOSED CLASS FOR SETTLEMENT PURPOSES

The Parties propose the Court provisionally certify this action as a class action under Rule 23 for settlement purposes.  The Court must determine that Rule 23's requirements are met, and that Plaintiff may be properly appointed Class Representative.  *See* Manual for Complex Litigation (Fourth) § 21.632 ["The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)."]  4 William B. Rubenstein, Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 11.25 (4th ed. 2010).  Provisional certification is an appropriate device where an agreement to settle occurs before a class is certified for litigation. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997); *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 125 (D.Colo.2016) ("any request for preliminary approval of a class settlement should include a section on why certification would be appropriate under the rule.")  Although Nationwide would, if contesting class certification on the merits, argue otherwise, the Parties have agreed for settlement purposes the Class may be certified under Rule 23(b)(3).  Further, the Settlement Agreement and proposed notice allow Class Members to exclude themselves from the Class as Rules 23(c)(2)(B)(v) and 23(e)(4) require.

### A.    The Numerosity Requirement is Met

Rule 23(a)(1) allows a class action to be maintained if "joinder of all members is impracticable" owing primarily to the large number of people in the proposed class.  Fed. R. Civ. P. 23(a)(1); *see also Pliego*, 313 F.R.D. at 125-126.   Although there is no minimum threshold that must be exceeded, the numerosity requirement is met when the class comprises 40 or more members, and 13 members have been found sufficient.  *See Decoteau v. Raemsich*, 304 F.R.D. 683, 687 (D. Col. 2014) citing *Wilcox Dev. Co. v. First Interstate Bank*, 97 F.R.D. 440, 443 (D. Ore. 1983); *Dale Elec., Inc. v. R.C.L. Elecs., Inc.*, 53 F.R.D. 531, 534-36 (D. N.H. 1971).  Here, the proposed settlement Class includes 6,634 insureds.  (Patrick Burnett Declaration, at p.2, ¶ 5) Size renders joinder impracticable, satisfying numerosity.  *See Pliego*, 313 F.R.D. at 125-126.

### B.    The Commonality Requirement is Met

Rule 23(a)(2) allows a class action to be maintained if "there are questions of law or fact common to the class."  "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011).  In other words, the class members' claims: "must depend on a common contention … [which] must be of such a nature that it is capable of classwide resolution – which means that a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*  "A finding of commonality requires only a single question of law or fact common to the entire class".  *Pliego*, 313 F.R.D. at 126, quoting *DG v. Devaughn*, 594 F.3d 1188, 1194-1195 (10th Cir. 2010).  Here, Class membership means each Class Member brought a claim, with a loss date during the Class Period, that resulted in a payment for the insured vehicle's total loss, on a Colorado private passenger automobile insurance policy issued

by Nationwide or a related entity.  (Fields Decl., Ex. A, pp. 3-4, ¶¶ 5-11)  Plaintiff contends

Nationwide underpaid such claims because it failed to include the total amount of ownership

taxes and title and registration fees associated with the total loss pursuant to C.R.S. § 10-4-

639(1).  (Doc. No. 72)  Each Class Member was subjected to the challenged conduct, so Plaintiff

believes answers to common questions, i.e. whether Nationwide violated C.R.S. § 10-4-639(1),

and whether Plaintiff and Class Members are entitled to relief, would resolve the claims.

Plaintiff contends Class Members' claims "challenge the application of a commonly-applied

policy," and commonality exists.  *Pliego*, 313 F.R.D. at 126.

### C.    The Typicality Requirement is Met

Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical

of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "'A plaintiff's claim is typical

of class claims if it challenges the same conduct that would be challenged by the class.'"  *Pliego*,

313 F.R.D. at 126, quoting *Bass v. PJCOMN Acquisition Corp*, Civ. No. 09-cv-01614-REB-

MEH, 2011 WL 2149602 (D.Colo. June 1, 2011) at *3.  "'[D]iffering fact situations of class

members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class

representative and class members are based on the same legal or remedial theory.'"  *Pliego*, 313

F.R.D. at 126, quoting*Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988).

Plaintiff just like Class Members brought an insurance claim to Nationwide with a loss

date during the Class Period, and received payment for the total loss of the insured vehicle from

Nationwide, and challenges its conduct with respect to alleged underpayment of fees pursuant to

C.R.S. § 10-4-639(1) in response to such claims.  Plaintiff shares an interest in redressing claims

with the Class, her claims are typical, and Rule 23(a)(3) is met.

### D.     Plaintiff and Class Counsel are Adequate Representatives

Finally, Rule 23(a)(4) and Rule 23(g) together require the named plaintiff and proposed

Class Counsel to be able to "fairly and adequately" protect and represent the interests of the

Class, respectively.  "Resolution of two questions determines legal adequacy: (1) does the named

plaintiff and her counsel have any conflicts of interest with other class members, and (2) will the

named plaintiff and her counsel prosecute the action vigorously on behalf of the class."  *Pliego*,

313 F.R.D. at 126-127, quoting *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188

(10th Cir. 2002) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).  Here,

no conflict of interest exists between the Class Representative, Class Counsel, and any members

of the proposed settlement Class.  Further, the Class Representative and Class Counsel already

vigorously prosecuted the lawsuit on behalf of the Class, including filing and serving the lawsuit,

serving initial disclosures, opposing motions to dismiss, propounding written discovery,

analyzing materials Nationwide provided, engaging in settlement discussions, and moving the

lawsuit forward to resolution.  (Fields Decl., ¶¶ 3-4)  "Once the plaintiff has made a prima facie

showing of adequate representation…. [a]bsent evidence to the contrary, a presumption of

adequate representation is invoked."  *Schwartz v. Celestial Seasonings, Inc.*, 178 F.R.D. 545, 552

(D.Colo.1998).  Nevertheless, it is "clear from the settlement itself that Plaintiff has prosecuted

the action vigorously on behalf of the class through counsel".  *Pliego*, 313 F.R.D. at 127. K&P

and H&L's resumes are submitted in support of appointment under Rule 23(g). (*Id.*, at Exs. B, C)

### E.     The Proposed Class Meets Rule 23(b)(3)

Rule 23(b)(3) provides a class action may be maintained where questions of law and fact

common to members of the class predominate over any questions affecting only individuals, and

the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3); *see also Maez v. Springs Automotive Group, LLC*, 268 F.R.D. 391, 397 (D.Colo.2010).  Settlement is proposed, so the Court need not consider trial manageability for settlement class certification purposes.  *See Amchem Prods.,* 521 U.S. at 620.  (Citation omitted)

The predominance inquiry focuses on liability, the relationship between common and individual issues, and "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Id.*, at 594; *Maez*, 268 F.R.D. at 397.  Common issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if those are more substantial than those requiring individualized proof.  *See Pliego*, 313 F.R.D. at 127, citing *United Food and Commercial Workers Union v. Chesapeake Energy Corp.*, 281 F.R.D. 641, 655 (W.D.Okla.2012).  Here, Plaintiff's claims arise out of the same alleged uniform course of conduct that affected all Class Members uniformly.  For settlement purposes, where manageability of trying the case need not be considered, predominance is satisfied.

In addition, a class action is superior to any other method available to fairly, adequately, and efficiently resolve the proposed Class Members' claims.  "[A]bsent class members to date have shown no interest in controlling the litigation" – no other similar actions exist against Nationwide – and the lawsuit involves relatively small fee claims related to total vehicle losses under C.R.S. § 10-4-639(1), which both support superiority.  *Pliego*, 313 F.R.D. at 127.  Without a class action, most insureds would find litigation costs prohibitive; if they did sue in large numbers, multiple individual actions would inefficiently use the Court's and parties' resources.

### III.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT AGREEMENT UNDER RULE 23(e)(2)

Preliminary approval requires the Court to evaluate whether the proposed settlement: (1) was negotiated at arm's length; and (2) is within the range of possible litigation outcomes such that "probable cause" exists to disseminate notice and begin the formal fairness process. *See* Manual for Complex Litigation (Fourth) § 21.632-33.  The Tenth Circuit identifies a number of factors analyzed to determine this standard: (1) whether the proposed settlement was fairly and honestly negotiated; (2) the judgment of the parties that the settlement is fair and reasonable; (3) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; and (4) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted expense of litigation. *See Rhodes v. Olson Associates, P.C.*, 308 F.R.D. 664, 667 (D. Colo. 2015), citing *Rutter*, 314 F.3d at 1188. Each factor supports finding the settlement here is fundamentally fair, adequate and reasonable.

Here, several indications the settlement negotiations were fair, honest, and conducted at arm's length exist.  *See Rhodes*, 308 F.R.D. at 667.  There is no indication of collusion.  Instead, the Parties vigorously advocated their respective positions throughout the lawsuit, which has "involved fact discovery and motions practice, including well-briefed dispositive motions." *See Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D.Colo.2006).  Furthermore, "Class Counsel are experienced in consumer class actions, and weight is given to their favorable judgment as to the merits, fairness, and reasonableness of the settlement." *Id.*, citing *Marcus v. Kan. Dep't of Revenue*, 209 F.Supp.2d 1179, 1183 (D.Kan.2002).  The Fields Declaration shows Class Counsel believe the Settlement Agreement is fair, adequate and reasonable.  (*See* Fields Decl., at ¶¶ 4-7)

"[I]t is not the role of the Court at this stage of the litigation to evaluate the merits …

[however] it is clear that the parties could reasonably conclude that there are serious questions of law and fact that exist that could significantly impact this case if it were further litigated." *Rhodes*, 308 F.R.D. at 667.  Nationwide has raised, and would continue to raise, challenges to the claims' legal and factual bases, and also challenges to class certification.  Nationwide has contended, among other things, that Plaintiff cannot show entitlement to additional fees under C.R.S. § 10-4-639(1) beyond what she was paid, particularly as to ownership taxes Plaintiff sought; Plaintiff cannot show unreasonable conduct or knowing and reckless disregard for the validity of Plaintiff's insurance claim for her bad faith claims; and that the TAC's class claims should be stricken. (*See, e.g.* Doc. No. 75)  Nationwide has indicated it would contend at the class certification stage that factual differences among Class Members, such as the amount of fees each Class Member incurred, the types of fees incurred and whether the fees were voluntary or credits were received, and the length of use of the prior yearly registration, for example, create individualized issues which defeat class certification.  Nationwide would also contend Plaintiff's bad faith claims are ill suited for class treatment, as they require highly individualized inquiries into the reasonableness of the insurer's conduct based on the circumstances of each loss and the interactions between the parties.  Plaintiff continues to believe in her claims; however, Plaintiff acknowledges risks associated with class certification and also risks of losing on the merits.  The most significant risks include that the Court may reject Plaintiff's claim as to recovery of ownership taxes under C.R.S. § 10-4-639(1) entirely, the fact finder may conclude Nationwide's conduct was not unreasonable or in bad faith, and individualized issues will be held to defeat both commonality and predominance.  While the Parties differ as to Plaintiff's likelihood of ultimately prevailing after judgment and appeal, it is apparent both the proposed Class and

11

Nationwide have risk litigating the lawsuit, and the outcome of the litigation is in doubt.  *See*

*Lucas*, 234 F.R.D. at 693-694; *Rhodes*, 308 F.R.D. at 667.

By contrast, the proposed settlement immediately provides a certain valuable benefit to

proposed Class Members.  During the settlement process, based on the range of potentially

recoverable fees, Plaintiff's counsel evaluated potential damages in the range of approximately

$80.00 to $150.00, excluding statutory attorney's fees provided for by C.R.S. § 10-3-1116(a),

and concluded an average of $40.00 per Class Member was fair and reasonable given all the

risks of litigation, which include without limitation that it may be held only "base" registration

fees are recoverable under C.R.S. § 10-4-639(1), that many Class Members may not have

documents to support their damages, and Nationwide's contention that some Class Members

may have already received the full amount under C.R.S. § 10-4-639(1).[3]  (Fields Decl., at ¶ 5)

The $40.00 payment all Class Members will receive for fees associated with total vehicle

losses during the Class Period is discounted for the risk of litigation but nonetheless a guaranteed

payment for financial costs incurred but allegedly not compensated for as a result of the

challenged practice.[4]  If the case is not settled, it would necessitate continuing to prosecute the

---

[3]During the settlement negotiations, the precise number of Class Members was unknown when the Parties agreed to the $40.00 per Class Member payment amount, and the number of potentially participating Class Members was uncapped, i.e. the Class size could have been ten times the 6,654 number, and the settlement still would have been consummated.

[4] By way of example, as Plaintiff's TAC alleged, she incurred $9.40 in title fees, $123.88 in yearly registration fees, and $99.52 in ownership taxes upon registering her vehicle prior to the accident that resulted in a total loss, and Nationwide paid her $9.50 in "Tag/Title" Fees only. (Doc. No. 72 at p. 3, ¶ 10)  During discovery, Plaintiff confirmed these figures and that she used the vehicle for 34% of the yearly registration period prior to the accident.  (Fields Decl., ¶ 4)

litigation through trial and, even if successful, through a potential appeal.  Even if Plaintiff

eventually succeeds the certainty still exists that if the case proceeds in litigation, potential

benefits to the proposed class would be delayed for many years.

The Settlement Agreement also provides for the recovery of attorney's fees for Class

Counsel, which would have been available as a separate statutory damage even if this case was

prosecuted individually, and not as a class action.  *See* C.R.S. § 10-3-1116(a).  The Parties

agreed Nationwide would not oppose a request for attorney's fees and costs of up to $121,000,

which is based on Plaintiff's counsel's lodestar and expenses at the time of the settlement

conference in January 2019.  (Fields Decl., at ¶ 5)

The Settlement Agreement, like all settlements, strikes a balance between the maximum

possible recovery Class Members might obtain by pursuing litigation to the very end, and the

risk of failing to obtain any recovery should Nationwide prevail.  In determining whether this

Settlement Agreement is sufficiently fair, adequate and reasonable to justify dissemination of

Class Notice and setting the Final Approval Hearing, the Court reviews whether "the prospect of

a trial necessarily involves a risk that the named Plaintiff and class members would obtain a

lesser recovery in damages," i.e. Nationwide's defenses would result in a finding Plaintiff and

Class Members were not underpaid by Nationwide under C.R.S. § 10-4-639(1) or by less than

they contend.  *Rhodes*, 308 F.R.D. at 667.  The answer to that inquiry is "yes," as such risk

exists.  "In contrast … the settlement guarantees all Class Members an equal cash payment …

[I]t also seems very likely that the value of an immediate recovery outweighs the mere

possibility of future relief after protracted and expensive litigation; a trial, post-trial motions, and

an appeal could reduce the net value of any recovery." *Id.*

13

## IV.     THE PROPOSED NOTICE SHOULD BE APPROVED

Rule 23(e)(1) provides "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  The Manual for Complex Litigation recommends "[o]nce the judge is satisfied as to the certifiability of the class and the results of initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members.  For economy, the notice under Rules 23(c)(2) and the Rule 23(e) notice are sometimes combined."  Manual for Complex Litigation (Fourth) § 21.633.  Combined notice helps avoid confusion that separate certification and settlement notifications may produce.  Further, "'[t]he hallmark of the notice inquiry … is reasonableness.'"  *Lucas*, 234 F.R.D. at 696, quoting *Sollenbarger v. Mountain States Telephone and Telegraph Co.*, 121 F.R.D. 417, 436 (D.N.M. 1988).

Here, the Parties propose to disseminate Class Notice via first-class mail and on a settlement website.  The manner provided for giving such Notice in Section VI of the Settlement Agreement ensures "all [class] members who can be identified through reasonable effort will be notified," and is "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).  It is also inherently "reasonable".  Fed. R. Civ. P. 23(e)(1).  Section VI of the Settlement Agreement in paragraph 47(c) provides Nationwide will provide to the Administrator a list of Class Members by name, current or last known address, among other information, and paragraph 47(d) then provides the Class Notice will be mailed to Class Members (Ex. A to Fields Decl., at pp. 14-16), and it will also be available on the settlement website.  Paragraph 49 then provides additional safeguards to maximize notice receipt by Class Members.  The notice plan is designed to ensure the maximum number of Class Members practicable receive notice under the

14

circumstances. *See* Fed. R. Civ. P. 23(c)(2)(B). Further, the Class Notice contains the requisite

information for proper notice of a class action settlement. *See* Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii).

### V.     THE COURT SHOULD ADOPT THE PARTIES' PROPOSED SCHEDULE

- As soon as practicable after Preliminary Approval, but in any event not later than thirty (30) days after entry of the Preliminary Approval Order, Nationwide shall provide to the Administrator, if reasonably available: the name, current or last known address, date of loss, policy number, and claim number of each person who is a Class Member;

- The Administrator shall cause the Class Notice and Claim Form to be mailed by first-class mail to the current or last known address for each Class Member, not later than sixty (60) days before the Final Approval Hearing;

- The deadline for opening briefs and materials in support of a service award to the Representative Plaintiff and payment to Class Counsel for its attorneys' fees and costs be set not later than forty-five (45) days prior to the Final Approval Hearing;

- The deadline for opening briefs and materials in support of final approval order and judgment be set not later than twenty eight (28) days prior to the Final Approval Hearing;

- The deadline for Class Members to opt-out of the Settlement be set for not later than twenty (20) days prior to the Final Approval Hearing;

- The deadline for Class Members to object to the Settlement be set for not later than twenty (20) days prior to the Final Approval Hearing;

- The Final Approval Hearing be set for a date not sooner than one hundred twenty (120) days after entry of the Preliminary Approval Order;

- The deadline for any Class Member to submit a Claim Form be set thirty (30) days after the Final Approval Hearing;

- The deadline for the Administrator to send a notice of deficiency to any Class Member whose Claim Form is deficient in any manner be set not later than thirty (30) days after the deadline for any Class Member to submit a Claim Form;

- The deadline for any Class Member who receives a notice of deficiency be set thirty (30) days from the mailing date of the notice of deficiency to send a postmarked response regarding the deficiency.

Respectfully submitted this 14th day of June, 2019.

| | |
|---|---|
| /s/ Joshua A. Fields | /s/ Mark A. Hanover (with permission) |
| Behram V. Parekh | Mark L. Hanover |
| Joshua A. Fields | Kristine M. Schanbacher |
| KIRTLAND & PACKARD LLP | DENTONS US LLP |
| 1638 South Pacific Coast Highway | 233 South Wacker Drive |
| Redondo Beach, CA 90277 | Suite 5900 |
| Telephone: (310) 536-1000 | Chicago, IL 60606 |
| bvp@kirtlandpackard.com | Telephone: (312) 876-8178 |
| jf@kirtlandpackard.com | mark.hanover@dentons.com |
| | kristine.schanbacher@dentons.com |
| *And* | |
| | ***Attorneys for Defendant Nationwide*** |
| Brett N. Huff | ***Agribusiness Insurance Company*** |
| HUFF & LESLIE, LLP | |
| 2480 Gray Street | |
| Edgewater, CO 80214 | |
| Telephone: (303) 232-3622 | |
| bhuff@huffandleslie.com | |

***Attorneys for Plaintiff, Melodie Bushman***