IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02277-WJM-NRN

MELODIE BUSHMAN,
on behalf of herself and all others similarly situated,

Plaintiffs,

v.

NATIONWIDE AGRIBUSINESS INSURANCE COMPANY,
an Iowa Corporation, and DOES 1-10, inclusive,

Defendants.

---

**JOINT MOTION FOR FINAL APPROVAL**

**OF CLASS ACTION SETTLEMENT**

---

Plaintiff, Melodie Bushman ("Plaintiff") and defendant Nationwide Agribusiness Insurance Company ("Nationwide") (collectively, the "Parties") hereby jointly move for final approval of the Stipulation of Class Action Settlement ("Settlement Agreement") between Plaintiff and Nationwide, pursuant to *Federal Rule of Civil Procedure* ("FRCP") Rule 23(e) and this Court's July 22, 2019 Order Preliminarily Approving Class Settlement.

**CERTIFICATION PURSUANT TO D.C.COLO.LCivR 7.1(a)**

Pursuant to D.C.COLO.L Civ. R. 7.1, the undersigned counsel certify they conferred prior to filing this motion and jointly make the motion.

**JOINT MOTION**

The Settlement Agreement should be granted final approval, as it is fair, reasonable, and adequate. As described herein, all the factors courts in this Circuit rely on to determine the

reasonableness of a class action settlement strongly weigh in favor of approving the Settlement Agreement. In addition, the Class supports the Settlement Agreement, as the Parties are not aware of a single Class Member who submitted an objection to the Settlement Agreement or expressed any criticism of the Settlement Agreement, and no opt-out forms were submitted.

## I. BACKGROUND OF THE LITIGATION AND SETTLEMENT

Plaintiff brought the lawsuit pursuant to FRCP Rule 23 on behalf of herself and all others similarly situated, seeking to represent all of Nationwide's Colorado insureds who filed claims for total loss vehicles and to whom Plaintiff alleged Nationwide did not pay ownership tax and title and registration fees pursuant to Colorado Revised Statutes ("C.R.S.") § 10-4-639(1). (*See* Third Amended Complaint ("TAC"), Doc. No. 72). Essentially, Plaintiff alleges Nationwide uniformly underpaid fees owed its insureds under C.R.S. § 10-4-639(1). Like all Class Members she seeks to represent, Plaintiff was insured by Nationwide and filed an automobile physical damage claim that Nationwide determined to be a total loss. (*See id.*) In her TAC, Plaintiff alleges Nationwide's conduct violated C.R.S. § 10-3-1115, *et seq.*, as an unreasonable delay of benefits owed, and constituted bad faith breach of an insurance contract under Colorado law, breach of contract, and breach of the duty of good faith and fair dealing. (*See id.*)

On June 11, 2019, the Parties executed a Settlement Agreement to resolve this putative class action lawsuit. (*See* Doc. No. 109-2, Class Action Stipulation of Settlement). Thereafter, on June 14, 2019, the Parties jointly moved for preliminary approval of the Settlement

Agreement, and approval of notice to the Class. (Doc. No. 109).[1] On July 22, 2019, the Court granted the joint motion, preliminarily certifying an opt-out settlement class, granting preliminary approval, and setting forth a number of actions for the Parties and the Claims Administrator, Epiq Class Action & Mass Tort Solutions, Inc. ("Epiq" or "Claims Administrator"), to undertake by certain dates. (Doc. No 110).

Since the Court granted preliminary approval, Epiq has issued the approved notice to the Class, as set forth in the concurrently filed Declaration of Zachary Lebovits, J.D. Regarding Notice Administration ("Lebovits Decl."), which confirms compliance with the class notice procedures. Since preliminary approval, the Parties have no indication that the Court has received any objection to the Settlement Agreement by the October 29, 2019 deadline for such objections, and are aware of no such objections to the Settlement Agreement, timely or otherwise. (Doc. No. 110 at pp.7-8 of 9, ¶ 19). Further, not a single written objection was received by the Claims Administrator by the Court-ordered October 29, 2019 deadline (nor have any objections been received by the Claims Administrator thereafter). (Lebovits Decl., p. 3, ¶ 9). Additionally, no opt-out forms were submitted by the deadline (nor have any opt-out forms been received by the Claims Administrator after the Court-ordered deadline). (Lebovits Decl., p. 3, ¶ 9; Doc No. 110 at p.7 of 9, ¶ 17). Lastly, per the Court's preliminary approval order, Plaintiff has separately moved for an award of attorney's fees and costs, and for approval of a service

---

[1] The procedural background of the settlement negotiations are contained in the previously filed joint preliminary approval motion and supporting documents (Doc. No. 109 at pp.2-3 of 16 and Doc 109-1 at p.5 of 5, ¶ 7), which are incorporated herein by reference, as well as the concurrently filed Fields Declaration in support of final approval.

award, in her own motion concurrently filed herewith. (Doc. No. 110 at p.7 of 9, ¶ 16).

## II. TERMS OF THE SETTLEMENT AGREEMENT

**Monetary Relief**[2]

The Court's preliminary approval order preliminarily certified a settlement Class in the lawsuit pursuant to FRCP Rule 23(e), consisting of: "all Persons in Colorado who had a Covered Loss." (Doc. No. 110 at p. 2 of 9, ¶ 2). A "Covered Loss" is defined as: "a first party physical damage insurance claim, with a date of loss during the Class Period, that resulted in an indemnity payment for the total loss of the insurance vehicle, on a private passenger automobile insurance policy issued by" Nationwide or one of its related entities. (*Id.*) The proposed Settlement Agreement provides Class Members substantial benefit in relation to the allegedly underpaid fees: Nationwide has agreed to pay $40.00 each to any of the potential 6,726 Class Members who submitted a timely and valid Claim Form. (Doc. No. 109-2 atp. 13 of 34, ¶¶ 31-32).

In addition, subject to Court approval, based on Plaintiff's counsel's lodestar at the time of the settlement conference between the Parties in Los Angeles on January 15, 2019, Nationwide has agreed to pay Plaintiff's counsel up to $121,000 in attorney's fees and costs[3], and up to $2,000 to the Class Representative as a service award for prosecuting the lawsuit on behalf of the Class. (Doc. No. 109-2 at p. 14 of 34, ¶ 34, p. 16 of 34, ¶ 43). As provided for in the Settlement Agreement, any funds remaining in the account established by the Claims

---

[2] All terms are defined in the Settlement Agreement. (Doc. No. 109-2).

[3] C.R.S. § 10-3-1116(a), which provides for statutory damages to a plaintiff for a C.R.S. § 10-3-1115 claim, includes an express provision for the recovery of attorney's fees to the plaintiff.

Administrator for payment of Settlement Checks due to uncashed Settlement Checks shall be distributed to the Parties' designated *cy pres* recipient, Legal Aid of Colorado, or as otherwise ordered by the Court.  (Doc. No. 109-2 at pp. 13-14 of 34, ¶ 33).

### III. THE PROPOSED SETTLEMENT AGREEMENT IS FAIR, REASONABLE AND ADEQUATE, AND SHOULD BE GRANTED FINAL APPROVAL.

Under FRCP Rule 23(e), the Court may approve a settlement that "would bind class members… only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  The approval of a settlement agreement is within the District Court's sound discretion.  *See New England Health Care Emps. Pension Fund v. Woodruff*, 512 F.3d 1283, 1290 (10th Cir. 2008).  When deciding "whether to approve a class action settlement, the court should 'not decide the merits of the case or resolve unsettled legal questions,'" since "'the essence of the settlement is compromise, and settlements are generally favored.'" *Ashley v. Reg'l Transp. Dist. & Amalgamated Transit Union Div. 1001*, No. 05-cv-01567-WYD-BNB, 2008 WL 384579, at *4 (D. Colo. Feb. 11, 2008), quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981) and *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 283 (D. Colo. 1997), citing *Williams v. First Nat. Bank*, 216 U.S. 582, 595, 30 S.Ct. 441, 54 L. Ed. 625 (1910); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985).  Thus, a court reviews a "settlement [] to determine whether the proposed settlement is fundamentally fair, adequate and reasonable, not to rewrite the settlement agreement." *Ashley*, 2008 WL 384579 at *4, citing *Hanlon v. Chrysler Corp.*, 150 .3d 1011, 1026 (9th Cir. 1998).

The Tenth Circuit Court of Appeals has identified four non-exclusive factors to be considered when determining whether a settlement agreement is fair, reasonable, and adequate under the relevant standard:

> (1) whether the proposed settlement was fairly and honestly negotiated;
> (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
> (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
> (4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002), quoting *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993).

The Settlement Agreement in the instant action is fundamentally fair. The Settlement Agreement represents a substantial recovery for the Class. Each Class Member who submitted a valid and timely claim form will receive a $40.00 payment, which is a significant percentage of the range of alleged damages Plaintiff's counsel calculated during the settlement process for each Class Member (approximately $80.00 to $150.00 per Class Member, excluding statutory attorney's fees provided for by C.R.S. § 10-4-639(1)). In light of the substantial benefit to the Class, each of the four relevant factors identified by the Tenth Circuit in analyzing the existence of the elements of FRCP Rule 23(e)(2) weighs strongly in favor of granting final approval.

### A. **The Settlement Was Fairly and Honestly Negotiated.**

As previously described in the Parties' preliminary approval motion, and now in the concurrently filed Declaration of Joshua A. Fields in Support of Motion for Final Approval ("Fields Decl."),[4] the Settlement Agreement was fairly and honestly negotiated by experienced counsel over many months, including an in-person meeting in Los Angeles. (*See* Doc. No. 109,

---

[4] This Motion for Final Approval of Settlement is brought as a joint motion by the Parties, but Mr. Fields' Declaration is being submitted herewith on behalf of Plaintiff only. Nationwide did not participate in the preparation of the Fields Declaration.

at pp. 2-3 of 16; Doc. 109-2 at p.2 of 5, ¶ 7; Fields Decl., ¶ 7). Additionally, the Parties had vigorously advocated their respective positions throughout the lawsuit, which has "involved fact discovery and motions practice, including well-briefed dispositive motions." *See Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D.Colo. 2006). Indeed, here, the matter was settled only after the Parties had engaged in significant dispositive motion practice and Class Counsel had undertaken significant discovery in order to best understand the merits of the claims and defenses.[5] (*See* Fields Decl., ¶ 3) *See Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-cv-01543, 2010 WL 2650037 at *3 (D. Colo. June 30, 2010) (finding settlement agreement "fairly and honestly negotiated," as "parties entered into the agreement only after engaging in a meaningful exchange of information, and with full knowledge of the critical factual and legal issues.")

B. **Serious Questions of Law and Fact Exist, Placing the Outcome in Doubt.**

This second factor addresses whether "the parties could reasonably conclude that there are serious questions of law and fact that exist such that they could significantly impact this case if it were litigated," including disputes over liability, whether individualized issues would defeat class certification, and the amount of damages. *Lucas*, 234 F.R.D. at 693. As the parties explained in the motion for preliminary approval, and as set forth in the Fields Declaration,

---

[5] It is Plaintiff's position that Class Counsel and the Class Representative adequately represented the Class pursuant to FRCP Rule 23(e)(2), as previously set forth in the preliminary approval motion (*see* Doc No. 109 at p.8 of 16, incorporated herein by reference), and in the Fields Declaration and concurrently filed Declaration of Melodie Bushman in Support of Plaintiff's Unopposed Motion for Attorneys' Fees and Expenses and a Service Award. Ms. Bushman's Declaration is being submitted on behalf of Plaintiff only in connection with Plaintiff's Unopposed Motion for Attorney's Fees and Expenses and a Service Award that is being separately filed. Nationwide did not participate in the preparation of the Bushman Declaration.

serious questions of both law and fact exist that could significantly impact the case and the potential recovery. (*See* Fields Decl., ¶ 5; *see also* Doc. No. 109 at pp.10-12 of 16).

"[I]t is not the role of the Court at this stage of the litigation to evaluate the merits … [however] it is clear that the parties could reasonably conclude that there are serious questions of law and fact that exist that could significantly impact this case if it were further litigated." *Rhodes*, 308 F.R.D. at 667. Nationwide has raised, and would continue to raise, challenges to the claims' legal and factual bases, and also challenges to class certification. Nationwide has contended, among other things, that Plaintiff cannot show entitlement to additional fees under C.R.S. § 10-4-639(1) beyond what she was paid, particularly as to ownership taxes Plaintiff sought; Plaintiff cannot show unreasonable conduct or knowing and reckless disregard for the validity of Plaintiff's insurance claim for her bad faith claims; and that the TAC's class claims should be stricken. (*See, e.g.* Doc. No. 75). Nationwide has indicated it would contend at the class certification stage that factual differences among Class Members, such as the amount of fees each Class Member incurred, the types of fees incurred and whether the fees were voluntary or credits were received, and the length of use of the prior yearly registration, for example, create individualized issues which defeat class certification. Nationwide would also contend Plaintiff's bad faith claims are ill-suited for class treatment, as they require highly individualized inquiries into the reasonableness of the insurer's conduct based on the circumstances of each loss and the interactions between the Parties. Plaintiff continues to believe in her claims; however, Plaintiff acknowledges risks associated with class certification and also risks of losing on the merits. The most significant risks include that the Court may reject Plaintiff's claim as to recovery of ownership taxes under C.R.S. § 10-4-639(1) entirely, the fact finder may conclude Nationwide's

conduct was not unreasonable or in bad faith, and individualized issues will be held to defeat both commonality and predominance. While the Parties differ as to Plaintiff's likelihood of ultimately prevailing after judgment and appeal, it is apparent both the proposed Class and Nationwide have risk litigating the lawsuit, and the outcome of the litigation is in doubt. *See Lucas*, 234 F.R.D. at 693-694; *Rhodes*, 308 F.R.D. at 667.

  C. <u>**The Value of an Immediate Recovery Strongly Outweighs the Possibility of Further Relief After Protracted Litigation.**</u>

This factor weighs the value of an immediate recovery against "the mere possibility of future relief after protracted and expensive litigation." *Rutter*, 314 F.3d at 1188. In a recent case in which a settlement provided class members 50% of their losses, a Court in this Circuit found the immediate recovery factor satisfied, because "a jury trial could leave the class with a smaller award, or no award at all" and the settlement "guarantees a favorable outcome for the class, and will facilitate a faster and easier payment than the class would receive after a jury trial." *Lowery v. City of Albuquerque*, No. CIV 09-0457 JB-WDS 2013 WL 1010384 at *38 (D.N.M. Feb. 27, 2013). The same reasoning applies with equal force here.

During the settlement process, based on the range of potentially recoverable fees, Plaintiff's counsel evaluated potential damages in the range of approximately $80.00 to $150.00, excluding statutory attorney's fees provided for by C.R.S. § 10-3-1116(a), and concluded an average of $40.00 per Class Member was fair and reasonable given all the risks of litigation, which include without limitation that it may be held only "base" registration fees are recoverable under C.R.S. § 10-4-639(1), that many Class Members may not have documents to support their damages, and Nationwide's contention that some Class Members may have already received the full amount under C.R.S. § 10-4-639(1). (*See* Fields Decl., ¶ 5). The precise number of Class

Members was unknown when the Parties agreed to the $40.00 per Class Member payment amount, and the number of potentially participating Class Members was uncapped.  (*See Id.*)

### D.     Class Counsel Believes the Settlement is Fair and Reasonable.

Where the parties are represented by counsel who have "substantial experience in complex class action litigation … 'Counsels' judgment as to the fairness of the agreement is entitled to considerable weight.'"  *Lucas*, 234 F.R.D. at 695, quoting *Marcus v. Kansas Dept. of Revenue*, 209 F.Supp. 2d 1179, 1183 (D.Kan. 2002) ("When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable.")  Here, "Class Counsel are experienced in consumer class actions, and weight is given to their favorable judgment as to the merits, fairness, and reasonableness of the settlement."  *Id.*, citing *Marcus v. Kan. Dep't of Revenue*, 209 F.Supp.2d 1179, 1183 (D.Kan.2002).  The Fields Declaration shows Class Counsel believe the Settlement Agreement is fair, adequate and reasonable.[6]  (*See* Fields Decl., at ¶¶ 4-8).  Moreover, Class Counsel view the settlement as an outstanding result for Class Members, given that it provides a guaranteed recovery of a substantial portion of the allegedly underpaid fees, considering the risks of further litigation.(*See Id.*)

### E.     Reaction of the Class Supports Approval

In addition to the four non-exclusive factors identified above for evaluating a settlement, courts often consider the reaction of the class to decide whether a settlement should be approved

---

[6] The Parties also previously represented in the joint preliminary approval motion they believe the settlement is fair and adequate.  (Doc. No. 109 at pp.10-13 of 16).

under FRCP Rule 23(e).  *See Ponca Tribe of Indians of Okla. v. Cont'l Carbon Co.*, No. 05-445 (C) 2009 WL 2836508 at *2 (W.D. Okla. Jul 30, 2009); *West v. First Franklin Fin. Corp.*, No. 06-2064-KHV-JPO, 2007 U.S. Dist. LEXIS 79286, at *4 (D. Kan. Oct. 24, 2007) (noting that the Court "gives weight to the parties' judgment that the settlement is fair and reasonable, as well as to the class's reaction to the settlement.")  As settlement notices do not ask class members to affirmatively express their support for a settlement, courts generally consider the failure to object to a settlement as a sign of approval of the settlement.  *See, e.g., Ramah v. Navajo Chapter v. Babbitt*, 50 F.Supp. 2d 1091, 1101 (D.N.M 1999) (observing that "[t]he reaction of the Class has been favorable as judged by the fact that 98% or more of the putative Class members . . . , all of whom received notice, failed to object or express any criticism of the Settlement.")  In the instant case, the reaction of the Class has been positive.  The Parties are not aware of a single objection to the Settlement Agreement (neither counsel for the Parties nor the Claims Administrator has received an objection) and no one opted-out of the Settlement Agreement.  (*See* Lebovits Decl., at p. 3, ¶ 9).

## IV.     CONCLUSION

For the foregoing reasons, as well as those set forth in the Parties' Joint Motion for Preliminary Approval of Class Action Settlement, final approval should be granted.

Respectfully submitted this 5th day of November, 2019.

/s/ Joshua A. Fields
Behram V. Parekh
Joshua A. Fields
KIRTLAND & PACKARD LLP
1638 South Pacific Coast Highway
Redondo Beach, CA 90277
Telephone: (310) 536-1000
bvp@kirtlandpackard.com
jf@kirtlandpackard.com

*And*

Brett N. Huff
HUFF & LESLIE, LLP
2480 Gray Street
Edgewater, CO 80214
Telephone: (303) 232-3622
bhuff@huffandleslie.com

***Attorneys for Plaintiff, Melodie Bushman***

/s/ Mark L. Hanover (with permission)
Mark L. Hanover
Kristine M. Schanbacher
DENTONS US LLP
233 South Wacker Drive
Suite 5900
Chicago, IL 60606
Telephone: (312) 876-8000
mark.hanover@dentons.com
kristine.schanbacher@dentons.com

***Attorneys for Defendant Nationwide Agribusiness Insurance Company***